17303

THE STATE, Respondent, v. EARL LE MASTER and WILLIAM BURRIS, Appellants

(98 S. E. (2d) 756)

*Messrs. John D. Long and James W. Workman,* of Union, *for Appellants.*

*Messrs. Mike S. Jolly, Solicitor of the Civil and Criminal Court of Union, J. F. Walker and David Wilburn,* of Union, *for Respondent.*

June 5, 1957.

TAYLOR, Justice.

Appellants, Earl LeMaster and William Burris, were convicted in the County Court for Union County of the charge of "Breach of Trust with Fraudulent Intention," Section 16-365, Code of Laws of South Carolina, 1952.

Appellants contend first that the trial Court erred in refusing Appellants' motion for a directed verdict of not guilty in that there was insufficient evidence to require submitting the case to the jury.

Appellants, as contractors, entered into a written contract with Miss Willie Mae Mitchel and Mrs. Ethel Hughey on or about September 17, 1955, wherein they agreed to completely construct, by November 11, 1955, a building, according to the specifications contained therein, for the sum of $8,000.00; payments were to be made by the owners to the contractors "by week or as work progresses." Construction was commenced on or about September 15, 1955; and the following payments were made as the work progressed:

| | |
|---|---|
| September 23, | $1,000.00 |
| September 30, | 1,500.00 |
| October 7, | 900.00 |
| October 13, | 1,100.00 |
| October 20, | 2,000.00 |

On November 10, 1955, it was apparent that the building could not be ready for occupancy the next day; however, the prosecutrix, Willie Mae Mitchell, and the appellant, LeMaster, went to Roebuck, S. C., for the purpose of obtaining materials with which to complete the building; and upon their return, appellants worked into the night in their efforts

to complete it as soon as possible. While on the trip, the prosecutrix, Mitchell, offered to pay the balance, $1,500.00, due, according to her contention, on the contract to LeMaster for completion of the building. LeMaster contended that there was due an additional sum of $591.59 for extras and refused to accept the $1,500.00 as payment in full. That night, while at work, this disagreement became more accentuated, and appellants removed their tools from the scene and refused further construction on the building. Thereafter, the prosecutrices employed another party to complete the building for the sum of $1,700.00 or approximately $200.00 more than the amount owed the appellants according to the prosecutrices' own testimony.

It is undisputed that certain variances from the original contract were made by agreement of the parties in the construction of said building, but the prosecutrices contend that such changes were to be without additional cost. Appellants contend, however that variations from the original plans were to be at additional cost to the prosecutrices. Reference to Section 31 of the contract, which was introduced into evidence, reads as follows:

"All work in above to be done by contractor in a workmanlike manner. Any changes are to be agreed on by owner and contractor. All work is to ·be according to plans. Any changes or additions are to be at extra cost. Agreed on by Contractor at this time."

And such changes and additions amounted to the sum of $591.59 according to appellants. All payments were made by check in the amounts heretofore related, and each check bore the notation, "For labor and material paid in full up to date."

For a conviction, the State relied principally upon testimony to the effect that on October 20, 1955, appellant, Burris, told the prosecutrices that $2,000.00 was needed to pay for material, and specifically some $600.00 owing to one M. D. Martin. The prosecutrices gave Burris the check as re-

quested, at which time there were outstanding bills in the amount of $2,091.59, including the Martin bill; and it is contended that this payment of $2,000.00 was impressed with a special trust for the payment thereof, which trust was violated by appellants in that these bills have remained unpaid. However, the undisputed testimony reveals that the materials used in the construction of the building were billed to appellants and not to the prosecutrices. The Mechanic's Lien filed against the property was filed by the appellants and not the materialmen, and there is no evidence that any of the materials were diverted from the project or converted in anywise to the use of appellants. The prosecutrices dealt only with appellants, and the appellants dealt with the materialmen who expected to receive their compensation from appellants and not the prosecutrices; and no notice of the accounts was given by the materialmen to the owners. It is also significant that after the prosecutrices were aware that the building could not be completed by November 11, they offered as payment in full the $1,500.00 which they contended was due under the contract but refused to pay the $591.59 demanded by appellants for the changes and extras, and appellants refused to accept the $1,500.00 as payment in full. The notations on the checks to the effect that the owners' obligations had been met up to the date of the check related to their transactions with appellants and did not mean that the contractors had paid all materialmen in full. In fact, it could not, as the Martin bill, relied upon so strongly by the prosecution, was not rendered until October 27th, 1955, seven days after the $2,000.00 check was handed the appellants.

We are of the opinion that there is no evidence of a trust relationship as contended and the Court erred in not granting appellants' motion for a directed verdict of not guilty; that the sentence and judgment of the Court should be reversed and set aside and a verdict of not guilty entered as to the appellants; and It Is So Ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.